UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**ERLEND OLSON**,<br><br>    *Defendant*. | Case No. 25-cr-69-1 (RCL) |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Erlend Olson's emergency motion to revoke the pre-trial detention order of a Magistrate Judge. Mot. for Revocation of Detention Order ("Def.'s Mot."), ECF No. 26. For the reasons contained herein, the Court will **DENY** the motion.

## I.   BACKGROUND

The defendant is charged by indictment with one count of Conspiracy to Commit Wire and Mail Fraud, in violation of 18 U.S.C. § 1349; five counts of Wire Fraud, in violation of 18 U.S.C. § 1343; one count of Mail Fraud, in violation of 18 U.S.C. § 1341; and four counts of Tax Evasion, in violation of 26 U.S.C. § 7201. *See* Indictment, ECF No. 1.

According to the allegations in the indictment, the defendant was the founder and head[1] of Theia Group Incorporated ("Theia"), an aerospace company that purportedly was going to launch satellites that would provide continuous remote sensing data for the entire globe simultaneously. The indictment alleges that the defendant and four co-conspirators fraudulently obtained over $250 million, from approximately 200 investors and lenders, by misrepresenting Theia's true financial position and technical capabilities. The indictment also describes the defendant's involvement in

---

[1] The indictment specifies that the defendant held various leadership positions of Theia, including Chief Operating Officer, Chief Scientist, and Chief Executive Officer.

1

a tax evasion scheme spanning multiple years to evade his personal income tax. *See generally* Indictment.

The defendant was arrested in New Mexico on March 17, 2025, and made his initial appearance that day. The government informed the court that it was requesting detention based on the defendant's risk of flight and obstruction of justice, and a detention hearing was set for March 20, 2025. At that hearing, the Magistrate Judge found that "the government has shown by a preponderance of the evidence that Mr. Olson is a flight risk" and that the factors under 18 U.S.C. § 3142(g) of the Bail Reform Act weighed in favor of detention. Order of Detention Pending Trial at 3, ECF No. 28-1. The defendant was taken into custody that day and remains incarcerated in New Mexico, though he will soon be transported to the District of Columbia.

On April 4, 2025, just over two weeks after the Magistrate Judge's detention order, the defendant filed an emergency motion for revocation of the detention order in this Court. Defs.' Mot., ECF No. 26. The government filed an opposition on April 7, 2025. Mem. in Opp'n to Mot. to Revoke Magistrate Order ("Opp'n"), ECF No. 28. The Court held a hearing on the motion on April 8, 2025,[2] and the motion is now ripe for review.

## II.   LEGAL STANDARDS

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Gloster*, 969 F. Supp. 92, 96–97 (D.D.C. 1997) (quoting *United States v. Salerno*, 481 U.S. 739, 755(1987)). The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, sets forth the "limited circumstances" in which a defendant may be detained prior

---

[2] The transcript from the hearing is not yet available on ECF. The Court will cite to the hearing transcript with the notation "Tr." and will provide the pin-citations to specific pages and lines as they appear in the rough draft currently available to the Court.

to trial "despite the presumption in favor of liberty." *United States v. Anderson*, 384 F. Supp. 2d 32, 34 (D.D.C. 2005).

The Bail Reform Act requires release of a defendant prior to trial unless a judicial officer determines, after a hearing, that "no condition or combination of conditions will reasonably assure the appearance" of the defendant in court or the "safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021). As is relevant here, the government relies primarily on the defendant's flight risk.

In determining whether any conditions of release will reasonably assure the appearance of the person as required, the court must "take into account the available information concerning" four factors set out in 18 U.S.C. § 3142(g). These factors are:

> (1) the nature and circumstances of the offense charged . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including:
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . . ;
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g). The government is required to demonstrate the appropriateness of pretrial detention because of the defendant's risk of flight "by a preponderance of the evidence." *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). "That preponderance must, of course, go to the ultimate issue: that no combination of conditions—either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful—can 'reasonably' assure that the defendant will appear for trial." *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (citing 18 U.S.C. § 3142(c)).

3

A motion under 18 U.S.C. § 3145(b) for review of a Magistrate Judge's detention order requires that the Court review *de novo* whether conditions of release exist that "will reasonably assure the defendant's appearance in court or the safety of any other person or the community." *United States v. Hassanshahi*, 989 F. Supp. 2d 110, 113 (D.D.C. 2013) (citing 18 U.S.C. § 3142(e)(1)). "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C.2013) (quoting *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011)).

### III.  DISCUSSION

The Court sets out below an evaluation of each of the four factors, under 18 U.S.C. § 3142(g), that must be considered in determining whether pretrial detention is warranted.

#### A. Nature and Circumstances of the Charged Offenses

According to the indictment, this case centers on the defendant's actions at the helm of a conspiratorial scheme to defraud approximately 200 investors and lenders. The defendant and his co-conspirators allegedly raised more than $250 million by misrepresenting Theia's financial position, and of that $250 million, the defendant took approximately $9 million for himself and concealed that amount on top of the $1.2 million in back taxes he already owed. Opp'n at 4.

If convicted of every charge in the indictment, the defendant faces a maximum sentence of 160 years' incarceration, and the government computes his advisory guideline sentence as life in prison. Opp'n at 6; Order of Detention, ECF No. 28-1. This considerable punishment gives the defendant "a substantial incentive to flee the United States." *United States v. Bikundi*, 47 F. Supp. 3d 131, 134 (D.D.C. 2014) (observing that the defendant's potential sentence of twenty years' incarceration for money laundering with an advisory guideline range of 168 to 210 months

4

increased defendant's flight risk, thus warranting detention); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (denying motion for pretrial release by defendant facing substantial penalties for bribery and visa fraud); *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) (ordering detention and noting the lengthy sentence that would accompany conviction was factor that increased flight risk). Considering the serious nature of the offense and the severe punishment the defendant faces if convicted on all counts, this factor weighs in favor of detention.

### B. Weight of the Evidence Against the Defendant

In her order of detention, Judge Rozzoni observed that the evidence contains over a million documents, in addition to videos and recorded phone calls, representing that the defendant "not only forged company financial documents related to his business, but also used similar forged company documents in relation to his personal financial transactions." Order of Detention at 3. The Court relies on this evidence as well. *See Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013) (court is "free to use . . . any evidence or reasons relied on by the magistrate judge"). The defendant raises various challenges to the government's evidence, such as a failure to disaggregate the financial loss to institutional investors from non-institutional investors. Def.'s Mot. at 11–12. But even considering these specific challenges, which the defendant may of course continue to raise in his defense throughout this case, it is clear that at this preliminary stage the government has assembled a comprehensive body of evidence directly implicating the defendant.[3] This factor weighs in favor of detention.

---

[3] The defendant argues that "[w]hile the Court may weigh the length of Mr. Olson's potential sentence and the weight of evidence as somewhat unfavorable, of the various 3142(g) factors, Courts have deemed the weight of the evidence to be the least important factor." *See* Def.'s Mot. at 13 (first citing *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990); and then citing *United States v. Carrasco-Carrasco*, No. 20-cv-20061 (JAR) (D. Kans. Dec. 22, 2020)). Though the Court acknowledges this case law, it is not bound by it—and indeed, courts in this Circuit have taken a different view. In *United States v. Blackson*, then-Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-cr-25 (BAH), 2023

### C. History and Characteristics of the Defendant

This factor considers the defendant's "physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The Court observes that the defendant has a criminal history consisting of two prior convictions for driving under the influence of alcohol or drugs, with several violations of probation. Opp'n at 10.[4] The defendant's criminal history, instances of substance abuse in connection with these crimes, and numerous violations of his terms of supervision weigh in favor of detention.

The Court now turns to the defendant's family and community ties, employment, and financial resources, which were the subject of significant discussion at the Court's hearing. Here, although the defendant has ties to Albuquerque, New Mexico, where some members of his family also reside, his lack of stability and other tenuous circumstances suggest that he poses a significant flight risk.

The defendant has resided in Albuquerque for the past ten years. Def.'s Mot. at 15. The defendant's 83-year-old father, who lives in Albuquerque, testified at the hearing that the defendant moved in with him in 2016 but has since moved out. Tr. 6:10–13. The Motion

---

WL 1778194, at *8 (D.D.C. Feb. 26, 2023), aff'd, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." Id. at *10. The Court adopts this approach.

[4] In Judge Rozzoni's Order of Detention, she relied in part on the fact that one of the defendant's violations resulted in a 30-day period of incarceration, but oddly, the defendant had represented that he "has no recollection of what he did, or did not do, that resulted in a month-long incarceration." Order of Detention at 3. The parties have since corrected the record on this point—the defendant never served that period of incarceration and instead took part in an alcohol offender program. Def.'s Mot., Ex. 9, ECF No. 26-9. But the fact remains that the defendant did violate the terms of his supervision, and Judge Rozzoni additionally observed in her findings that the defendant failed to comply with his probation requirements "on at least four separate occasions." Order of Detention at 3.

represents that the defendant's father has "extensive health needs and depends on [the defendant] for support." *Id.* To provide more context for how the defendant supports him, the defendant's father testified at the hearing that he has "virtually daily" contact with the defendant, though they do not live together anymore—the defendant's father lives with his daughter (i.e., the defendant's sister) and his son-in-law (i.e., the defendant's brother-in-law). Tr. 5:14–15. The defendant takes part in providing care for his father by grocery shopping, helping with maintenance around the house, and coordinating doctor's appointments. Tr. 6:18–25.

However, while the Court does not doubt that this care is integral to the defendant's father's well-being, there were key pieces of information that the defendant's father had no knowledge of, undermining the suggestion that the defendant's ties to his father mitigate any potential flight risk. For example, the defendant's father represented that the defendant only has $2.01 in his checking account and has been evicted from his house for failing pay his rent the last three months. Tr. 7:17–18, 10:3–5. But, the defendant's father did not seem to know how the defendant had previously been making rental payments of $6,000 every month, postulating that he likely paid "[e]ither with money he earned as an engineering consultant or with borrowed money." Tr. 7:16–18; 10:1–9. The defendant's father also testified that he is in possession of the defendant's passport but was unaware that the defendant is a dual citizen of St. Kitts and Nevis (SKN). Tr. 7:12, 10:24–11:1. Lastly, the defendant's Motion states that his father is willing to provide a property bond, Def.'s Mot. at 7, but the father's testimony offered no information about its value—and moreover, given that his daughter and son-in-law also live in that property, it raises questions about who the owner of the property actually is or how the father could put up a bond that would put his daughter and son-in-law in that position. These unexplained gaps raise concern about the strength of the defendant's ties to his family in Albuquerque and suggest that those ties will not reasonably assure

7

the defendant's appearance in court. *C.f. Bikundi*, 47 F. Supp. 3d at 136 (finding "strong familial and community ties" when the defendant had lived in the U.S. for over sixteen years and was raising her three children here, with her parents and a number of relatives also residing in the country, but concluding that detention was still appropriate); *United States v. Muschetta*, 118 F. Supp. 3d 340, 345 (D.D.C. 2015) (observing that the defendant's "lengthy period of stable residence with his parents, girlfriend and small child" showed close community ties reducing risk of flight, but ordering detention based on the defendant's danger to the community).

The defendant also does not have stable employment. Counsel represented that the defendant works "odd jobs," including ad hoc contractual arrangements for various engineering related matters. Tr. 21:4–13. Lack of stable employment is a factor suggesting flight risk. *See United States v. Caldwell*, 540 F. Supp. 3d 66, 75 (D.D.C. 2021).

Perhaps most concerning are the defendant's ties to foreign countries and his demonstrated willingness to circumvent travel rules and restrictions. The defendant retains dual citizenship in SKN. Citizenship Confirmation, Exhibit 11, ECF No. 28-1. Specifically, in 2007, the defendant and his then-wife purchased SKN citizenship for $250,000 each. Opp'n at 13–14; Tr. 25:7. An SKN passport allows visa-free travel to more than 100 countries, including numerous countries with which the United States does not have extradition treaties. Although the defendant's SKN passport expired in 2017, the defendant has apparently not viewed this as an impediment, having since considered relying on his Kittitian citizenship to overcome travel restrictions. In June 2020, the defendant sought to travel to France for business, but Covid restrictions prevented travel from the United States to the European Union, so he suggested traveling to France from SKN as an SKN citizen. *Id.* at 14; Email, Ex. 12, ECF No. 28-1 ("I have the option of coming in from St. Kitts and

8

Nevis as a St. Kitts and Nevis citizen."). The defendant even suggested falsely claiming to French authorities that he resided in Ireland with an associate. Email, Ex. 12, ECF No. 28-1.

The defendant also has demonstrated knowledge of how to flee using his SKN citizenship. In 2015, the defendant's ex-wife (J.O.) was involved in legal proceedings and eventually held in contempt. Opp'n at 14. In an email, the defendant outlined why J.O. surrendering all her passports would not prevent her from fleeing:

> I would add that [J.O.] producing her passports (even if she does, in fact, produce them all) does little to stop her from fleeing. Her most likely course of action is to go to SKN on a private yacht . . . It would only be a couple day trip, and [J.O.] probably has the cash on her to pay for it straight away . . . On arrival in SKN sans passport, she will say she lost her passport and obtain a new one, since she is a citizen of that country. As you may know, an SKN passport allows visa-free travel [to] more countries than just about any passport but maybe a UK passport.

Email, Ex. 13, ECF No. 28-1. As defense counsel emphasized at the hearing, the defendant's explanation of how his ex-wife, whom he was in the process of divorcing, may illegally rely on SKN citizenship to flee does not automatically reflect on the defendant's own willingness or intention to flee. Tr. 40:7–14. But in the context of the defendant's past designs regarding his SKN citizenship, and the deceitful actions that form the bedrock of the pending charges, his knowledge of how to flee adds to this Court's finding that he poses a significant a flight risk—he has intimately thought about how to flee and has recently demonstrated a willingness to break rules and lie to travel authorities.

At the hearing, after the government explained the concerning nature of the defendant's prior invocation of his SKN citizenship, defense counsel suggested that the defendant would renounce his St. Kitts citizenship if ordered to do so. Tr. 40:3–5. However, defense counsel cited no legal authority for the Court's ability to order a defendant to renounce their citizenship, nor did he provide any information about the mechanism or time frame for renouncing SKN citizenship.

9

This suggestion, without any legal backing, rings hollow. Moreover, when pressed further about what conditions *other than pretrial detention* defense counsel would propose to reasonably assure the defendant's presence in Court, defense counsel failed to provide a set of proposed conditions—he simply represented that the defendant would abide by whatever conditions the Court saw fit. Tr. 45:6–46:2. When defense counsel, upon being asked directly, cannot even offer a "combination of conditions will reasonably assure the appearance" of the defendant as is the standard under the Bail Reform Act, it adds fodder to the Court's conclusion that there is no suitable combination of conditions short of detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by the Defendant's Release

The defendant's potential danger to the community is not the main basis for the government's continued request for pretrial detention, as the government primarily seeks detention based on the defendant's risk of flight pursuant to § 3142(f)(2)(A). *See* Tr. 25:19–22. However, an additional basis for the government's request is "obstruction of justice" under § 3142(f)(2)(B), Opp'n at 2, 15–17, and the government identifies an instance of witness tampering by the defendant that contributes to this Court's determination that pretrial detention is warranted.

The government has produced evidence that the defendant engaged in a conversation with a potential witness over Signal, an encrypted messaging application, in which the defendant (1) assisted in drafting a statement to be provided to the lead investigator; (2) suggested several times that the witness ask for immunity to "delay" the investigation; (3) suggested that the defendant would make sure the witness's legal fees were paid; and (4) told the witness to withhold specific pertinent information. Opp'n at 16; *see* Ex. 15, ECF No. 28-1. At the hearing, defense counsel conceded that these types of communications "shouldn't happen," but also argued that. if the Court simply orders the defendant not to communicate with witnesses, the Court has no reason to think

the defendant would not obey. Tr. 19:20–23. To the contrary, however, the government has identified several instances of the defendant disobeying court orders, as explained *supra* in connection with the defendant's prior convictions and violations of his conditions of supervision. The Court therefore has reason to conclude that an order would not sufficiently protect the community from the defendant's attempts at witness tampering. Therefore, this factor weighs in favor of detention.

* * *

Upon consideration of the evidence and arguments presented in connection with the pending motion, the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in § 3142(c), the Court finds that the government has established by a preponderance of the evidence that the defendant's pretrial release would pose a serious risk that he would flee. The scope of the defendant's alleged fraudulent activity in connection with the charged offenses, the substantial period of incarceration that he faces if convicted, his unstable situation in Albuquerque and his alleged overseas ties, and his attempt at witness tampering, when considered together, favor pretrial detention under 18 U.S.C. § 3142(f)(2).

## IV.  CONCLUSION

For the foregoing reasons, the defendant shall remain in custody pending trial and the defendant's motion for revocation of the Magistrate Judge's Order of Detention will be **DENIED**.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: April 9, 2025

Royce C. Lamberth
United States District Judge