UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 25-cr-69-1 (RCL) |
| | : | |
| ERLEND OLSON, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY IN SUPPORT OF HIS
MOTION TO RECONSIDER DETENTION ORDER**

Defendant Erlend Olson, through counsel, respectfully subnits this reply in support of his

Motion To Reconsider Detention Order.

Introduction

The government appears indifferent to the fact that Mr. Olson, a 63-year-old man with no

prior criminal record, with serious, un-addressed health problems that cause him constant pain

and threaten his life, has been held in pretrial detention without bond for fourteen months in this

extraordinarily complicated criminal case in which he is charged with non-violent offenses.

More to the point, the prognosis for trial-readiness in this case at any point in the

foreseeable future is poor.  There are terabytes upon terabytes of discovery and other data in this

case that have to be reviewed.  At least tens of thousands of these documents have to be

reviewed for privilege by me.  I am Mr. Olson's court-appointed counsel.  I have sought

assistance from a number of other firms in this case, thus far with no success.  I have discussed

this matter with the Federal Public Defender.  He and I are thinking about how to address it, but a

resolution of it is not immediately available or apparent.

And this is only the tip of the iceberg with respect to readying this case for trial.

Enormous amounts of digital information that were in the possession of the appointed Receiver

in the United States District Court for the Southern District of New York must be obtained from the private entity that now possesses them, and reviewed, *inter alia,* for privilege. Servers containing relevant data are missing and must be found. Many documents produced in discovery are corrupted. Perhaps most remarkably, the government is in the possession of multiple terabytes of data that it proposes to provide only *to me*, Mr. Olson's court-appointed lawyer. Then the government proposes to destroy its copies, purportedly freeing itself from its discovery obligations concerning them pursuant to Fed.R.Crim.P. 16 and *Brady v. Maryland,* 373 U.S. 83 (1963). Numerous defense subpoenas must be issued to the wide variety of governmental and non-governmental entities and persons with which Theia did business during the company's lifetime, since these interactions relate directly to whether Theia was a fraudulent entity. Prominent individuals with extensive experience in the defense and aircraft industries, some of whom served on Theia's Board of Directors, must be located and interviewed. Further, all of this is an addition to the need to litigate CIPA issues in this case, which has entailed entry of a CIPA scheduling order extending into February, 2027. The government disclaims any interest in classified material in this case, but as the Court will see, Theia's contacts with governmental entities relating to classified materials was extensive and is directly relevant to the charges in this case. The government is content to allow Mr. Olson to remain at the Northern Neck Regional Jail throughout this process, repeatedly experiencing the frightening symptoms of atrial fibrillation which could kill him, unable to urinate standing up, unable to void his bladder completely, unable to walk without a walker, with severe infections in his teeth and two toes.

<u>Health Status</u>

The government poo-poos Mr. Olson's medical issues. There is, however, no dispute that this 63-year-old man suffers from:

- atrial fibrillation;

- a pre-cancerous enlarged prostate with an elevated PSA level;

- a knee condition in which his cartilage is turning to bone, requiring him to use a walker;

- two severely infected toes, infected down to the first joints, which could develop into systemic infections at any time;

- two severely infected teeth, causing constant pain, which also could develop into systemic infections; and

- a hernia causing a visible protrusion in his midsection.

The Northern Neck Regional Jail is, not to put too fine a point on it, utterly callous to and uninterested in these conditions.  Mr. Olson has filed a long series of institutional forms about them during his incarceration.  An example is Exhibit 1.  Filing these forms is how he is directed by the institution to seek to address his medical issues.  He has seen a doctor exactly three times in fourteen months.  The first time was in or around May, 2025.  He received a prescription for Flomax.  Then, after the instant motion recently was filed, he has had two more visits, each lasting approximately five minutes.  He was told he had to be referred to a podiatrist, urologist, orthopedist, dentist and cardiologist.  Not one of these referrals has occurred.  However, the institution has sought to have Mr. Olson sign a release that would have released it from civil liability.

Risk of  Flight

Mr. Olson never changed his residence or sought to flee during the many months this investigation was underway, including after multiple search warrants were executed.

The government emphasizes that Mr. Olson's purchased citizenship in the country of Nevis/St. Kitts.  I have tried repeatedly, without success to facilitate his resignation of his

citizenship.  Exhibit 2 is the form -- a distorted, crooked "pdf" document, as it appears here -- that is the form for this purpose disseminated on the Nevis/St. Kitts website.  It will be evident from review of it that there is no way to provide the materials the country seeks while Mr. Olson is incarcerated, particularly since we have no idea of the location of his passport from that country and cannot have Mr. Olson photographed.  Mr. Olson does, in fact, have ties to the District of Columbia, given that Theia, the company he founded, maintained offices at the Willard Hotel for years.  He has no access to any significant funds and no current international contacts that could aid flight.  There is no genuine risk of flight in this case.

<u>Strength of the  Case</u>

The government cites Mr. Fargnoli's cooperation, but has provided no information about what he would say about Mr. Olson.

<u>Witness Tampering</u>

The government makes no attempt to join issue with the substance of our argument, in our initial motion, concerning its witness tampering allegations.

<u>Our Proposal for Third-Party Custodianship</u>

If the Court allows an evidentiary hearing on this motion, we will seek to elicit testimony from the individual prepared to give Mr. Olson a home in New Mexico, as well as the relatives prepared to donate their time to monitor him daily, and from Mr. Olson himself.  If Mr. Olson is allowed to reside in New Mexico, he would be available to communicate with undersigned counsel at any time, and review documents using the "screen share" feature of Zoom.  Currently, meeting with Mr. Olson in Warsaw, Virginia, and reviewing digital materials with him there, is exceptionally difficult.  The travel to and from the institution, plus the meeting, typically consumes a full day.

<u>Conclusion</u>

Accordingly, it is respectfully submitted that Mr. Olson's detention should be reconsidered and that he should be released on appropriate conditions.

Respectfully submitted,

/s/ Barry Coburn

Barry Coburn Bar No. 358020
Coburn & Eisenstein PLLC
1200 G Street, N.W.
Suite 800
Washington, DC  20005
(If suite number is not included, delivery will not be made)
Telephone:  (202) 643-9472
Facsimile:  (866) 561-9712
barry@coburngreenbaum.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this reply will be served upon all counsel of record via the Court's ECF system, this 11th day of May, 2026.

/s/ Barry Coburn

Barry Coburn