**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 25-cr-69-RCL |
| | ) | |
| STEPHEN BUSCHER, | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |

**DEFENDANT STEPHEN BUSCHER'S REPLY IN SUPPORT OF HIS MOTION TO
PRESERVE AND FOR AN ORDER DIRECTING REVIEW OF DIGITAL EVIDENCE**

The 23 terabytes of evidence at issue in this Motion (the "Subject Data") are highly likely to contain evidence that is both relevant and exculpatory. And although it has possessed that evidence for nearly five years, and has twice represented to this Court that it would produce relevant portions of it, the Government has changed its mind, and now seeks to wish that evidence away. In its Opposition to Defendants' Motion for an Order Directing Review of Voluminous Digital Data (May 26, 2026) [ECF No. 147] ("Gov't Opp.") it offers 4 arguments in support of its position. None are valid.

**ARGUMENT**

**I. THE GOVERNMENT POSSESSES EVIDENCE WITH RESPECT TO WHICH IT
MUST MEET ITS OBLIGATIONS.**

The Government first asserts that the Subject Data is "not in [its] possession, custody, or control." Gov't Opp. at 3. This is demonstrably untrue. As the Government states in its Notice of Return of Digital Evidence (April 15, 2026) [ECF No. 110] ("Notice of Return"), it seized the

data when it executed search warrants in June 2021, and for the past five years, the data has resided

in its custody, "stored at IRS-Criminal Investigation." Notice of Return at 4. Despite its admitted

custody of the forensic images and devices containing the data,[1] the Government asserts that this

evidence is not in its possession because "[w]ith respect to data obtained pursuant to a criminal

search warrant, the Government is only in possession of information that falls within the scope of

a search warrant." *Id.* (citing *United States v. Balwani,* No. 5:18-CR-00258-EJD-2, 2022 U.S.

Dist. LEXIS 80997 (N.D. Cal. Apr. 7, 2022)).

The court in *Balwani* based its ruling on the Ninth Circuit's decision in *United States v.*

*Comprehensive Drug Testing, Inc.,* 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) (per

curiam)("*CDT*"). There, Government agents obtained a search warrant authorizing them to seize

electronic data from investigative targets. In its application for the warrant, the Government

asserted that a "broad seizure" was required because of the "generic hazards of retrieving data that

are stored electronically" – for example:

> [C]omputer files can be disguised in any number of ingenious ways, the simplest of which is to give files a misleading name (pesto.recipe in lieu of blackmail.photos) or a false extension (.doc in lieu of .jpg or .gz). In addition, the data might be erased or hidden; there might be booby traps that "destroy or alter data if certain procedures are not scrupulously followed," certain files and programs might not be accessible at all without the proper software, which may not be available on the computer that is being searched; there may simply be too much information to be examined at the site; or data might be encrypted or compressed, requiring passwords, keycards or other external devices to retrieve.

---

[1] The Government notes that it seized 42 devices in executing the June 2021 search warrants, and that "most" of these devices were returned to their owners. Notice of Return at 2. However, the Government admits that an unspecified number of the devices remain in its possession. *Id.* at n.3.

621 F.3d at 1168.  Thus,  "[t]he government sought the authority to seize considerably more data than that for which it had probable cause, … and to have the information examined and segregated in a 'controlled environment, such as a law enforcement laboratory.'"  *Id.*

In *CDT,* the court found this permissible, but held that the Government "overreach[ed]" by having its case agent review the seized files, and making use of materials seized without probable cause to further its investigation.  *Id.* at 1172.  The court wrote that although "over-seizing is an inherent part of the electronic search process, … [t]he process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect."  *Id.* at 1177.

In *Balwani,*  the COO of Theranos, Inc. – a company that performed medical blood testing – was charged with fraud in the company's operations.  During trial, he moved to dismiss the indictment against him for what he alleged were Government violations of Rule 16 and *Brady.*  The data at issue in Balwani comprised patient test results and quality control data stored in a bespoke database called LIS, which was created and maintained by a third-party consulting firm and its principal, Vinaswathan Chandrasekaran.  Government agents executed a search warrant on Chandrasekaran, seizing 16 devices comprising 21.4 terabytes of data, of which 772 gigabytes fell within the search warrant's date range.  *Balwani,*  2022 U.S. Dist. LEXIS 80997 *4.  Thus, the search in *Balwani* yielded two data sets:

> A 772 GB data set for which the Government had probable cause, and which the search warrant authorized to be seized and used by the Government (the "Fully Authorized Data Set"); and

> Approximately 20.7 TB for which the Government did *not* have probable cause, but which was authorized to seize only to the extent necessary to segregate it from data in the Authorized Data Set (the "Provisionally Authorized Data Set").

The *Balwani* court held that because the search warrant did not authorize the Government to seize the data in the Provisionally Authorized Data Set for any purpose other than segregating it from the data in the Fully Authorized Data Set, the Government "never had a lawful right to maintain possession, custody, or control over the non-responsive 21TB," and, therefore, "could not have been under an obligation to review or turn over that data to the defense."  2022 U.S. Dist. LEXIS 80997 *15-16.

Even if *Balwani* is correctly decided,[2] it is inapposite.  The *Balwani* court found that the materials at issue there – the Provisionally Authorized Data Set – were not in the Government's "possession, custody, or control" because they had been determined *not* to be responsive to the terms of the search warrant by which it was obtained.  The remaining materials – the Fully Authorized Data Set – clearly were in the Government's possession under the terms of *Balwani,* because probable cause existed for their seizure.

By contrast, no one knows what portion of the Subject Data at issue here meets the warrant's probable cause determination, and what portion does not.[3]  Even under *Balwani*, the former is manifestly in the Government's "possession, custody, or control," because it was

---

[2] The *CDT* court held that absent probable cause, the Government had no legal right to review and use the fruits of its "over-seizure."  The case did not address whether the material was in the Government's "possession" – in fact, it clearly was, and the Government was authorized to "possess" it, if not to review or use it.  The *Balwani* court erroneously cited *CDT* for the proposition that the Government lacked "possession, custody, or control" over the data not subject to the search warrant.

[3] The Government also cites *United States v. Collins*, 409 F. Supp. 3d 228 (S.D.N.Y. 2019), but that case is inapposite for the same reason as *Balwani.*  In *Collins*, the Government seized electronically stored information ("ESI") belonging to certain individuals, and searched it to determine what  portions of it were responsive to a search warrant.  The *Collins* court rejected the defendant's demand that the Government search those portions of the ESI that had been determined *not* to be responsive to the search warrant.  409 F. Supp. 3d at 244. As discussed above, the Government has not determined what portion of the Subject Data is responsive to the search warrant.

lawfully seized, with probable cause, pursuant to the warrant.  The Government's decision, made for its own convenience, not to review the material does not alter the fact that, even under its own theory,  the Government possesses any portion of this data subject to the warrant.[4]  Nor does it alter the Government's obligations with respect to that material.   In sum, even if the Government is not obligated to produce to the defendants the entirety of the Subject Data, it is obligated to determine what portion of it is subject to the warrant, and to meet its obligations as to such data.

## II.   THE GOVERNMENT IS NOT RELIEVED FROM MEETING ITS DISCOVERY OBLIGATIONS BECAUSE THE WARRANT UNDER WHICH IT SEIZED THE SUBJECT DATA IS STALE.

The Government asserts – without further explanation – that it is relieved from meeting its discovery obligations with regard to the evidence in its possession because the June 2021 warrant "no longer authorizes the government to access" it.  Opp. at 3. Presumably, that warrant placed a time limit on the Government's ability to search and seize evidence.  But with respect to electronically stored information, the time specified for execution of a warrant "refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review," Fed. R. Crim. P. 41(e)(2)(B), and courts have consistently held that a warrant for electronically stored information is executed when the information is seized or copied, and that law enforcement is permitted to decode or otherwise analyze data on a seized device after the date specified for execution in a warrant.  *E.g., United States v. Huart*, 735 F.3d 972, 974 n.2 (7th Cir. 2013). In short, this argument is unavailing.[5]

---

[4]The Government's suggestion that the data at issue is not within its possession, custody, or control because it "has not been searched in accordance with Attachment B to each search warrant," Notice of Return at 4, is wrong.  Whether the Government bothers to *search* materials it obtained pursuant to a search warrant does not alter the fact that the material came into the Government's possession when it was *seized* pursuant to the warrant.

[5] The Government's citation of *United States v. Maresca*, No. 1:23-CR-123 (RDM), 2026 WL 948289, at *25-26 (D.D.C. April 6, 2026) to support this argument is also unavailing.  There, the

## III.   THE GOVERNMENT IS REQUIRED TO PRODUCE *BRADY* MATERIAL IN ITS POSSESSION.

The Government also asserts that it has no *Brady* obligation with respect to the Subject Data at issue here because that material is not in its possession. As discussed above, this argument fails on its own terms with respect to that portion of the Subject Data that is responsive to the search warrant. And the Government may not short circuit *Brady* by simply deciding not to look at the data in its possession. The test under Brady "is an objective one," and "the rule is framed in a way that permits its application to facts of which the prosecutors are ignorant." *United States v. Brooks*, 966 F.2d 1500, 1502 (D.C. Cir. 1992). "[A] prosecutor's office cannot get around Brady by keeping itself in ignorance, or compartmentalizing information about different aspects of a case." *Id*. (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)).

## IV.   THE GOVERNMENT'S PROPOSAL TO RESOLVE THIS ISSUE IS UNTENABLE.

The Government proposes that this issue be resolved by requiring the defendants to identify "specific materials within" the Subject Data that are relevant, in which case it will consent to "early return of Rule 17 subpoenas requesting such specific materials." Opp. at 5. The Government asserts that this will avoid the "expense and delay" of appointing a special master. But any such expense or delay is entirely of the Government's own making – it has had five years to review this material but chose not to. A party cannot rely on a burden it has created to avoid its obligations.

---

Government seized ESI from the defendant in 2021, but failed to review it until 2025, at which point it sought to use that evidence against the defendant. The *Maresca* court recognized that "the government may, at times, 'seize entire electronic devices and then conduct a later off-site search of those devices,'" and that this authority is limited by reasonableness. The question whether it was unreasonable for the Government in *Maresca* to delay review of seized evidence for 4 years, and then to seek to use that evidence against the defendant, is very different from the question whether it would be reasonable for the Government to review the Subject Data here, in order to meet its discovery obligations to the defendants in this case.

6

The decision in *United States v. Grant,* 2004 WL 1171258 at *3 (S.D.N.Y. 2004), proves the opposite of what the Government cites it for.  In *Grant*, the parties disagreed on whether the Government's own privilege team, or a special master, should conduct an initial privilege review of documents and the court approved the Government's privilege-team proposal. *United States v. Grant*, No. 04 CR 207 (BSJ), 2004 U.S. Dist. LEXIS 9462, at *2-4, *7 (S.D.N.Y. May 25, 2004). Both sides in *Grant* assumed review would happen; the only disagreement was over the form of that review.  The Government here proposes neither path *Grant* considered – it proposes no review at all, by anyone, followed by destruction. Worse still, *Grant*'s reasoning depends on the very procedural protection the Government here would deny – the defendants in *Grant* retained the right to object to the court before any document reached the trial team. *Id.* at *4.  Here, defendants would have no equivalent opportunity, because there would be no review and no production at all.

That leaves the Government's offer to "consent to early return of Rule 17 trial subpoenas requesting . . . specific materials" directed to "Theia's receiver." Opp. at 5.  The offer is absurd – it concedes that the Subject Data may include data that is relevant and discoverable; the only thing it withholds is the means to find them – defendants cannot identify "specific materials" within Subject Data that no one has reviewed, indexed, or catalogued, and Rule 17(c) specificity cannot be supplied for documents the defense has never been permitted to see.[6]

The Government objects to the appointment of a special master, but that is only one means to an end –  the Court may instead simply order the Government to make the data available to the defense, or order the Government conduct the review it has declined to perform for five years. But

---

[6] Moreover, the receiver whom the Government would have defendants subpoena no longer exists, having been  terminated on July 31, 2025, and closed on January 29, 2026.  And the receiver's earlier production was corrupted, stripped of the metadata necessary to establish the authorship, creation, and transmission of the documents at the heart of this prosecution. Routing Defendants back to that defunct and corrupted source is no remedy at all.

the Government's claim that there are no exceptional circumstances justifying such an appointment is incorrect. The Government's case – and the defendants' – turn on who created, signed, and transmitted certain documents, and the production of those documents the defense has received is stripped of the metadata necessary to establish those facts. The seized data, which includes some company's servers, may therefore be the only complete and reliable source of Theia's records in this case.

## CONCLUSION

For the foregoing reasons, Defendant Stephen Buscher respectfully requests that the Court grant the Motion, and order either:

1. that the Government review the Subject Data to determine what portion of it was seized pursuant to probable cause under the search warrant, and to meet its discovery obligations with respect to that material; or

2. appointment of a special master to perform such review; or

3. that the government produce the Subject Data to the Defendants.

Respectfully submitted,


_____/s/_____
Whitney Ellerman (D.C. Bar No. 420486)
Paul F. Enzinna (D.C. Bar No. 421819)
Ellerman Enzinna Levy PLLC
1050 30th Street, N.W.
Washington, DC 20007
+1 202.753.5553 (o)
+1 202.415.1543 (c)
wellerman@eellaw.com
penzinna@eellaw.com


*Counsel for Defendant Stephen Buscher*

**CERTIFICATE OF SERVICE**

       I certify that on June 2, 2026, a copy of the foregoing Defendant Stephen Buscher's Reply in Support of his Motion to Preserve and for an Order Directing Review of Digital Evidence was filed using the CM/ECF system, which will then send notification of such filing to all counsel of record.   It was also served electronically to Cozen O'Connor, counsel to Brevet Capital.

Dated:   June 2, 2026                  Respectfully submitted,

                                            _____/s/_____

                                        Whitney C. Ellerman (D.C. Bar No. 420486)
                                        Ellerman Enzinna Levy PLLC
                                        1050 30th Street, NW
                                        Washington, DC 20007
                                        202.753.5553
                                        wellerman@eellaw.com

                                        *Counsel for Defendant Stephen Buscher*

**DEFENDANT STEPHEN BUSCHER'S REPLY IN SUPPORT OF HIS MOTION TO PRESERVE AND FOR AN ORDER DIRECTING REVIEW OF DIGITAL EVIDENCE**